# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

2008 DEC -2 A 10:56

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :     CASE NO.: CR208-26 |
| | : |
| MATTHEW J. GOHN | : |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Matthew J. Gohn ("Gohn") is charged with transferring obscene material to a minor, in violation of 18 U.S.C. § 1470, and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5). Gohn filed a Motion to Exclude Statements and a Motion for a <u>Jackson-Denno</u> hearing. The undersigned conducted an evidentiary hearing concerning these matters on November 13, 2008, at which Special Agent Melvin L. Griffin ("Griffin" or "Agent Griffin") with the Naval Criminal Investigative Service ("NCIS") and Agent Tim Picard ("Picard" or "Agent Picard") of NCIS testified.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

A female called NCIS on April 30, 2007, reporting that Gohn was having improper online communications with a 14 year old minor. That day at approximately 6:30 p.m., NCIS agents located Gohn at his barracks and informed him of the accusations against him. Gohn was informed that he was not under arrest and then voluntarily agreed to accompany the NCIS agents back to their office for an interview.

AO 72A
(Rev. 8/82)

Agent Griffin and another NCIS agent began Gohn's interview at approximately 7:00 p.m. on April 30, 2008. It was explained to Gohn upon his arrival at the interview room that the interview was completely voluntary and he was then advised of his rights. A standard Military Suspect's Acknowledgement and Waiver of Rights form containing Gohn's <u>Miranda</u> rights was placed in front of him. The first paragraph of the form identified Gohn and indicated that he was suspected of indecent communication with a person under the age of 16. Following this paragraph, Gohn's <u>Miranda</u> rights were listed. The NCIS agents read each right aloud and asked Gohn if he understood his rights. Gohn initialed each right indicating that he understood his rights. The final paragraph of the form read:

> I understand my rights as related to me and as set forth above. With that understanding, I have decided that I do not desire to remain silent, consult with a retained or appointed lawyer, or have a lawyer present at this time. I make this decision freely and voluntarily. No threats or promises have been made to me.

(Gov. Ex. 1, p. 1). The form was signed by Gohn and the two NCIS agents at 7:10 p.m.

Gohn was interviewed for approximately forty (40) minutes. Agent Griffin was the primary agent in the interview, meaning that he was largely responsible for asking Gohn questions, while the second agent made notes. NCIS did not record the interview, despite having the ability to do so. As a result, there are no written or recorded notes of the questions asked during the interview. Griffin admitted that not everything that was said during the interview appeared in the written notes. At the conclusion of the interview, NCIS agents accompanied Gohn back to his barracks. Gohn agreed to let the agents search his living area after they informed him that he had the right to refuse the request. After their search, the agents accompanied Gohn back to NCIS

headquarters. Agent Griffin did not have contact with the NCIS agents while they were away. Griffin typed a statement in Gohn's absence.

Gohn was given the chance to read the statement prepared by Griffin and make any changes he felt were necessary. Gohn made two changes to the statement. Gohn read the corrected statement prepared by Agent Griffin, initialed each paragraph, and signed it at 10:16 p.m. on April 30, 2007. The first line of the sworn statement reads:

> I, ET3 Matthew J. Gohn, USN, make the following free and voluntary statement to Special Agent Melvin Griffin whom I know to be a Representative of the United States Naval Criminal Investigative Service. I make this statement of my own free will and without any threats made to me or promises extended. I fully understand that this statement is given concerning my knowledge of indecent language and communication with a person under the age of 16.

(Gov. Ex. 1, p. 2). According to protocol, Gohn was turned over to his command at the conclusion of his interview.

Agent Picard of NCIS was the case agent throughout the entirety of the investigation. Picard conducted a second interview of Gohn on July 18, 2007. The second interview was deemed necessary because the investigation was ongoing and new evidence came to light after a lab analyzed Gohn's computer. This evidence was inconsistent with what Gohn had told NCIS at his first interview and changed the scope of the investigation. Gohn had also contacted NCIS on two or three occasions inquiring about the case.

Agent Picard contacted Gohn's legal officer and informed him that Gohn was needed for an interview. Picard conducted the interview after Gohn arrived at his office approximately twenty minutes later. Upon Gohn's arrival, Agent Picard prepared a standard Military Suspect's Acknowledgement and Waiver of Rights form. This form

was identical to the form signed by Gohn at the April 30, 2007, interview with the exception that the crimes being investigated increased to "indecent language and communication with a person under the age of 16 and/or sending indecent pictures to a minor over the internet and possession of child pornography." (Gov. Ex. 4, p. 1). Following procedure, Picard read Gohn each right. Gohn initialed each paragraph and signed the bottom of the form at 9:55 a.m. on July 18, 2007. The entire interview took place in Picard's office, except for when Picard and Gohn went to another office to review a pornographic image found on Gohn's computer. Agent Picard did not take notes during the interview and there is no record of the questions he asked Gohn. Picard remembered Gohn inquiring into why the scope of the investigation had changed and what the lab results were. At the conclusion of the interview, Agent Picard typed a sworn statement in Gohn's presence. The first paragraph of the document stated:

> I, ET3 Matthew J. Gohn, USN, make the following free and voluntary statement to Tim Picard, whom I know to be a Special Agent of the United States Naval Criminal Investigative Service. This statement is of my own free will and without any threats made to me or promises extended. I fully understand that this statement is given concerning my knowledge of indecent language and communication with a person under the age of 16 and/or sending indecent pictures to a minor over the internet and possession of child pornography. I provide this statement after advisement and waiver of my rights.

(Gov. Ex. 4, p. 2). Gohn reviewed the voluntary statement and made some minor changes. After Picard prepared a corrected statement, Gohn read and initialed each paragraph and signed the statement at 11:37 a.m. on April 30, 2007. At the conclusion of the interview, Agent Picard informed Gohn's legal officer that Gohn had returned to work.

## DISCUSSION AND CITATION TO AUTHORITY

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards[1] effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. The circumstances of each case dictate "whether there is a restraint on the suspect's freedom of movement 'of the degree associated with a formal arrest.'" United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987) (quoting Minnesota v. Murphy, 465 U.S. 420, 430 (1984)). An objective, reasonable man test has been adopted "in cases involving custody issues." Id. at 1359. In applying this test, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Id. at 1360. In other words, the inquiry is whether "a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave" the scene. Id. (quoting Murphy, 465 U.S. at 430).

Based on the testimony given during the evidentiary hearing, the record reveals that it is irrelevant whether or not Gohn was considered to be "in custody" during the two

---

[1] "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444, 86 S. Ct. at 1612.

interviews. Prior to each interview, Gohn was read his <u>Miranda</u> rights, as evidenced by his initials and signature on the two Military Suspect's Acknowledgement and Waiver of Rights forms.

The United States Supreme Court's holding in <u>Jackson v. Denno</u>, 378 U.S. 368, (1964), governs the voluntariness of confessions, and in pertinent part provides:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. at 376, (internal citation omitted). A confession is not "voluntary" pursuant to the Due Process Clause when law enforcement officials have used coercive conduct. <u>Colorado v. Connelly</u>, 479 U.S. 157, 167, (1986). Coercion can be mental or physical. <u>Blackburn v. Alabama</u>, 361 U.S. 199, 206, (1960); <u>Chambers v. Florida</u>, 309 U.S. 227, 237 (1940). The test for determining if a confession is the result of coercion requires a review of the "totality of the circumstances." <u>Blackburn</u>, 361 U.S. at 206 (citing <u>Fikes v. Alabama</u>, 352 U.S. 191, 197 (1957). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." <u>United States v. Thompson</u>, 422 F.3d 1285, 1295-96 (11th Cir. 2005).

The evidence before the Court reveals that Gohn voluntarily, knowingly, and intelligently waived his <u>Miranda</u> rights prior to his interviews at NCIS on April 30, 2007, and July 18, 2007. Prior to each interview, Gohn was read his rights and provided with a Military Suspect's Acknowledgement and Waiver of Rights form containing Gohn's <u>Miranda</u> rights. Gohn initialed each right and signed the form before each interview.

Each form specifically stated that no threats or promises were made with regard to his waiver of rights. A statement was prepared after each interview. Gohn was given the opportunity to review each statement and made a few minor changes to both before signing the statement. The uncontroverted evidence establishes that Gohn made each statement of his own free will without any threats made or promises extended and that each statement was given after Gohn was advised of his Miranda rights and waived them. There is no evidence that either interview was too lengthy, that there was any threat of physical force, or that any promises were made to induce a confession. Accordingly, the record reveals that Gohn's statement was voluntarily given.

An accused effectively waives his Miranda rights if he: (1) voluntarily relinquishes them as the product of a free and deliberate choice, rather than through intimidation, coercion, or deception; and (2) makes his decision with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. United States v. Hawkins, 268 Fed. Appx. 824, 826 (11th Cir. 2008) (citing United States v. Barbour, 70 F. 3d 580, 585 (11th Cir. 1995)). A waiver is effective where the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." Moran v. Burbine, 475 U.S. 412, 421 (1986). "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." Hawkins, 268 Fed. Appx. at 824 (citing North Carolina v. Butler, 441 U.S. 369, 373 (1979)). "The question is not one of form, but rather whether defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case." Butler, 441 U.S. at 373).

The record establishes that Gohn signed a standard Military Suspect's Acknowledgement and Waiver of Rights form prior to the April 30, 2007, and July 18, 2007, interviews. By signing each of these forms, Gohn expressly waived his right to remain silent and his right to counsel. Gohn's express waiver of his rights is strong proof of its validity, however, this Court must evaluate the totality of the circumstances surrounding the interrogation. See Moran, 475 U.S. at 421. The evidence before the Court reveals that Gohn's statements were the product of a free and deliberate choice. Nothing in the record indicates that Gohn waived his Miranda rights as a result of intimidation, coercion, or deception. The record also establishes that Gohn waived his Miranda rights with the requisite level of comprehension. Gohn's statements on April 30, 2007, and July 18, 2007, are not subject to suppression, as they were given knowingly and voluntarily after he effectively waived his right to remain silent and his right to counsel.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Gohn's Motion to Suppress (Doc. No. 20) be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 2nd day of December, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE